## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY ALAN LEVIN | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 05-5172 |
| | : | |
| TRANSAMERICA OCCIDENTAL LIFE | : | |
| INSURANCE COMPANY | : | |
| | : | |
| Defendant/ | : | |
| Third Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SHEILA YELSON | : | |
| | : | |
| Third Party Defendant. | : | |

### MEMORANDUM AND ORDER

Joyner, J.                                         August 20, 2008


Presently before this Court is Defendant Transamerica Occidental Life Insurance Company's ("Transamerica") and Third Party Defendant Sheila Yelson's Joint Motion for Summary Judgment (D. Mot.) (Doc. No. 30), Plaintiff Jeffrey Levin's ("Levin") Response ("P. Resp.") (Doc. No. 33), Defendant's and Third Party Defendant's Reply ("D. Rep.") (Doc. No. 37) and Plaintiff's Sur-Reply ("D. S.Rep.") (Doc. No. 40). For the reasons set forth below, the Court GRANTS Defendant's and Third Part Defendant's motion.

## BACKGROUND

Jeffrey Levin claims that he is entitled to a fifty percent share of an insurance benefit on a last to die life insurance policy ("the Policy") issued by Transamerica to his parents, Leonard and Marjorie Levin.  Leonard Levin, the last of the insureds, died in 2004.

At the time the Policy was issued in August 1990, Plaintiff's sister, Sheila Yelson, was the sole owner and beneficiary of the Policy.  In the years following the initial issuance of the Policy, Transamerica received several forms altering the status of the owners and beneficiaries of the Policy.

On November 5, 1990, Transamerica received a change of beneficiary form purporting to designate the beneficiaries under the Policy to be Sheila Yelson and Jeffrey Levin in equal amounts.  Then, on February 14, 1991, Transamerica received a change of ownership form purporting to transfer the ownership of the Policy to Jeffrey Levin.  The following day, Transamerica received a revised change of beneficiary form purporting to designate Jeffrey Levin as the sole primary beneficiary and Sheila Yelson as the contingent beneficiary.

On April 11, 1991, Transamerica received another change of beneficiary form purporting to designate Jeffrey Levin and Sheila Yelson as equal beneficiaries.  Later that month, on April 30,

2

Transamerica received a change of ownership form purporting to designate Jeffrey Levin and Sheila Yelson as co-owners of the Policy.

Then, on December 3, 2001, Transamerica received a change of beneficiary form purporting to designate Sheila Yelson as the primary beneficiary of the Policy and her husband, Michael Yelson, as the contingent beneficiary.

On April 3, 2002, Transamerica received a change of ownership form purporting to change the owner of the Policy from Shelia Yelson to Leonard Levin, her father.  Transamerica responded to the change of ownership form by letter dated June 3, 2002, requesting that Sheila Yelson print her name on the ownership change form, correct her social security number and initial the changes.  Sheila Yelson did not submit the corrections to the April 3, 2002 change of ownership form.

Transamerica received a final change of beneficiary form dated January 8, 2003 purporting to change the beneficiary designation to Sheila Yelson as the primary beneficiary, Michael Yelson as the contingent beneficiary and Sheila Yelson's children as sub-contingent beneficiaries.

Following the death of her father, Sheila Yelson submitted a claim for benefits to Transamerica on January 10, 2004.  On January 17, 2004, Sheila Yelson notified Transamerica of a possible competing claim by her father's second wife.

3

Transamerica Senior Claims Examiner Deborah Fields was the claims examiner assigned to the Policy.  James Smith, an experienced claims consultant, additionally reviewed the claim and assessed the proper owner and beneficiary under the Policy.

By letter dated February 2, 2004, Transamerica advised Ms. Yelson that her life insurance proceeds had been approved for payment and that the Policy benefit of $1 million dollars would be paid to her in full.

Transamerica received a letter dated May 14, 2004 advising the company of Plaintiff's claim to the insurance proceeds.  By letter dated June 4, 2004, Ms. Fields responded to Plaintiff's attorney and advised him that the death benefit had been paid.

Plaintiff subsequently filed the instant action against Transamerica in September 2005 alleging breach of contract (Count I), breach of fiduciary duty (Count II), statutory bad faith (Count III) and violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law ("UTPCPL")(Count IV).

Transamerica subsequently joined Sheila Yelson in the action as a Third Party Defendant.

Defendant Transamerica and Third Party Defendant Sheila Yelson argue that two documents, dated November 5, 1990 and February 14, 1991 purporting to alter the beneficiary and ownership designations under the Policy, were forged.  As a result, Plaintiff is not entitled to a share of the benefit as he

4

claims because he was neither a legal owner or beneficiary under the Policy.  They have moved for summary judgment on all of Plaintiff's claims.

## STANDARD OF REVIEW

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense.  Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).  Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden."  Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998).  In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir.

5

2000).  However, there must be more than a "mere scintilla" of
evidence in support of the non-moving party's position to survive
the summary judgment stage.  Anderson, 477 U.S. at 252.

## DISCUSSION

### A.   Breach of Contract

Plaintiff claims that Transamerica "breached its obligation
to Plaintiff and has failed to pay him $500,000.00, interest on
said amount, and such other entitlements as Plaintiff may have
under Policy #92316726 following the death of Leonard S. Levin"
because Plaintiff is both an owner and primary beneficiary of the
life insurance Policy at issue.  (Pl. Compl. at ¶¶ 32,33).
Transamerica argues that Plaintiff has presented inadequate
evidence to sustain a cause of action for breach of contract.

In order to state a claim for breach of contract under
Pennsylvania law, a plaintiff must allege: (1) the existence of a
contract, including its essential terms, (2) a breach of a duty
imposed by the contract[,] and (3) resultant damages.  Chemtech
Int'l Inc. v. Chemical Injection Technologies, Inc., No. 06-3345,
2007 U.S. App. LEXIS 21697 at *4-*5 (3d Cir. Sept. 10, 2007),
quoting Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir.
2003) (quoting CoreStates Bank, N.A. v. Cutillo, 1999 PA Super
14, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  For a contract
to be enforceable, the nature and extent of the mutual

6

obligations must be certain and the parties must have agreed on the material and necessary details of their bargain.  Lackner v. Glosser, 892 A.2d 21 (Pa. Super. 2006), citing Peck v. Delaware County Board of Prison Inspectors, 572 Pa. 249, 260, 814 A.2d 185, 191 (2002).

While Defendants have set forth material facts suggesting that the November 5, 1990 and February 14, 1991 owner and beneficiary forms were forged, Plaintiff has failed to present any meaningful evidence suggesting that they are authentic. Because Plaintiff has failed to meet the threshold requirement in order to prove a breach of contract claim (that a contract existed between the parties), his claim fails as a matter of law.

Shortly after Plaintiff commenced this lawsuit, Transamerica retained a forensic document examiner with over thirty years experience to conduct an analysis of the handwriting on all of the change of beneficiary and ownership forms which had been submitted to the company in the years preceding Leonard Levin's death.  The forensic expert, James Steffen, concluded that it was "probable" that the November 5, 1990 form had been forged and "highly probable" that the February 14, 1991 form had been forged.  (Pl. Mot. at Ex. 48).  Mr. Steffen's independent findings supported James Smith's earlier conclusion that Sheila Yelson had not signed the forms and that owner and beneficiary status had not been legally transferred to her brother.

Plaintiff, on the other hand, has failed to provide evidence contradicting the findings of Transamerica's expert.   Instead, he offers immaterial evidence which fails to establish a genuine factual dispute.

For example, Plaintiff claims that all change of ownership and beneficiary forms submitted to Transamerica in the years preceding his father's death were signed and witnessed by Merle Fasnaugh, a former agent of Transamerica's.   Therefore, Transamerica necessarily authenticated each signature at the time it was executed and submitted to the company.   However, Mr. Fasnaugh testified at his deposition that he never met or spoke with Plaintiff or Ms. Yelson.   (Def. Mot. at Exh. 50).
Plaintiff's argument that Mr. Fasnaugh's signature authenticates Ms. Yelson's signature on the forms at issue is unpersuasive. Mr. Fasnaugh's testimony that he never met Ms. Yelson speaks directly to his inability to authenticate her signature on those forms.   Further, as Defendant aptly points out, "that the change forms at issue may bear witness the signature of Transamerica's former representative does not negate their existence as clear forgeries, nor does it somehow render Transamerica liable on the basis of uncontrovertibly forged documents."   (Pl. Mot. at 18). Plaintiff has not directed the court's attention to any case law suggesting that an insurance agent's signature on a change of ownership or beneficiary form necessarily authenticates an

alleged forged document.

Plaintiff additionally claims that a letter sent by Ms. Yelson's attorney, Richard L. Gerson, in October 2000 to Transamerica advising the company of a possible improper attempt to change the ownership and beneficiary designations under the Policy proves that Ms. Yelson (and her attorney) believed that Plaintiff was a co-owner and co-beneficiary of the Policy. As proof, Plaintiff directs the court's attention to the subject line of the letter wherein Mr. Gerson identifies Ms. Yelson and Plaintff as a co-owners and beneficiaries of the Policy.

We disagree with Plaintiff that this letter is of material significance. While the letter might have expressed Mr. Gerson's subjective understanding of the Policy at that time, it does not authenticate the actual signatures on the change forms. As Plaintiff is aware, the terms of the insurance Policy specifically stated that: "[a]ll owners of policies issued by Transamerica are required to execute beneficiary designation forms in order to cancel a prior beneficiary designation and to effect a new beneficiary designation." (Def. Mot. at Exh. 1; Pl. Mot. at 17). Plaintiff has failed to explain how the letter addresses the central issue which Plaintiff must prove in this case -- that the forms were not forged.

Furthermore, Mr. Gerson sent another letter to Transamerica in June 2002 informing the company that an April 3, 2002 form had

9

been forged.   (Def. Mot. at Exh. 15).   The letter specifically
stated that Ms. Yelson was the sole owner and beneficiary of the
Policy, further undermining Plaintiff's argument that Mr.
Gerson's earlier letter is somehow material evidence which
supports his claim.   Id.

Lastly, Plaintiff attempts to bolster his argument that the
forms were authentic and that a contract existed between the
parties by questioning the validity of the conclusions reached by
Defendant's handwriting expert and James Smith, Transamerica's
agent who reviewed and processed Ms. Yelson's insurance benefit
claim.   (Pl. S.Rep. at 3).   Certainly, Plaintiff has the right to
question the reliability of the qualifications and conclusions
rendered by Plaintiff's expert.   However, merely asserting those
claims without any countervailing evidence that the signatures
were, in fact, authentic, falls woefully short of satisfying
Plaintiff's burden of proof.

A review of the record and the submissions of the parties
demonstrates that Transamerica has presented uncontroverted
evidence that the forms at issue purporting to convey ownership
and beneficiary status to Plaintiff were forged, and thus, void.[1]
The Third Circuit has previously held that a court, on a motion
for summary judgment, may decide whether the evidence is "so one

---

[1]In Pennsylvania, a document that is forged or made without
authority of the individual, is inoperative.   See, e.g. Johnson v.
First Nat'l Bank of Beaver Falls, 81 A.2d 95, 96 (Pa. 1951).

sided that one party must prevail as a matter of law." <u>Nieves v.</u>
<u>Hess Oil Virgin Islands Corp.</u>, 819 F.2d 1237, 152 (3d Cir.
1987)(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242
(1986)(holding that a plaintiff's bald allegation of a forgery
did not raise a genuine issue of material fact sufficient to
preclude summary judgment.))  Here, the evidence that Plaintiff
has presented would not allow a reasonable jury to conclude that
he became a co-owner and co-beneficiary of the Policy giving rise
to a contract between Plaintiff and Transamerica.

Thus, Count I of Plaintiff's Complaint alleging breach of
contract is dismissed as a matter of law.

**B.   Breach of Fiduciary Duty**

We agree with Defendants that Plaintiff has no standing to
assert a breach of fiduciary claim because there is insufficient
evidence to demonstrate that he is either a contractual owner or
beneficiary under the Policy.  Plaintiff, in arguing that
Transamerica breached its fiduciary duty, necessarily assumes
that he has established that a contractual relationship existed
between the parties.  However, as discussed above, the record
fails to support such a claim.

However, *assuming arguendo* that Plaintiff had presented
evidence sufficient to support his claim that a contract existed
between the parties, he has failed to adequately demonstrate that
Transamerica owed him a fiduciary duty and, if so, that the

11

company breached its duty.

Plaintiff explains that his breach of fiduciary claim against Transamerica is "grounded upon Plaintiff's reliance on Transamerica to conduct itself in a proper fashion, to make proper payments to beneficiaries, to properly and timely advise owners and beneficiaries of any and all changes and/or purported changes affecting the rights of ownership or beneficiary designation and of their rights, including, inter alia, their rights to insurance proceeds as Transamerica maintained in its sole possession all appropriate ownership and beneficiary designation forms."  (Pl. Resp. at 44).

Generally, under Pennsylvania law, there is no common law tort for breach of fiduciary duty against an insurer.  See e.g. Wood v. All-State Ins. Co., 1996 WL 637832 at *2 (E.D. Pa. 1996). A fiduciary relationship between an insurer and the owner of a Policy only arises in limited circumstances.  See Connecticut Indem. Co. v. Markman, 1993 WL 304056 at *5 (E.D.Pa. 1993)(holding that an insurance company may form a fiduciary relationship when it "asserts a stated right under the Policy to handle all claims against the insured.")[2]

In the instant case, Plaintiff has not set forth a legal

---

[2]Similarly, life insurance companies generally have no fiduciary obligation to beneficiaries of life insurance policies as their relationship is solely a matter of contract.  See Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh, 776 F.2d 1174, 1177 (3d Cir. 1985).

basis for the imposition of a fiduciary duty upon Transamerica. Even if Plaintiff had established a legal basis with which to impose a fiduciary duty upon the company, he fails to demonstrate that Transamerica breached any duty.  Transamerica undertook an investigation to determine the proper beneficiary of the Policy prior to paying the entire death benefit to Ms. Yelson.  Other than impugning the qualifications of James Smith, Plaintiff has not set forth material facts demonstrating otherwise.

Plaintiff's additional argument that Transamerica breached its fiduciary duty by refusing to "provide Plaintiff with appropriate ownership and designation forms until multiple letters demanding same together with telephone conversations requesting same were made and it was only following the continued insistence of Plaintiff and his counsel that Defendant on or about September 16, 2005 provided said materials to Plaintiff through his counsel" is unsupported by the record and without merit under the same analysis.

Because Plaintiff has failed to demonstrate that genuine issues of fact exist regarding this claim, we grant Defendant and Third Party Defendant summary judgment as a matter of law on Count II of Plaintiff's complaint.

13

**C.    Bad Faith Claim**

Plaintiff claims that Transamerica acted in bad faith, in violation of 42 Pa. C.S.A. § 8371 by, inter alia, failing to properly provide Plaintiff with copies of relevant insurance documentation and withholding monies due Plaintiff pursuant to the insurance Policy.  (Pl. Compl. at ¶¶ 38-40).

Based upon our review of the record and Plaintiff's submissions, we find that he has failed to raise material facts that suggest Transamerica acted in bad faith.

The elements of a statutory cause of action for bad faith in an insurance related action are as follows: (1) the insurer lacked a reasonable basis for denying benefits; and (2) the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.  Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (1994).

The Third Circuit has previously held that a defendant is entitled to summary judgement if he has demonstrated a "reasonable basis" for its conduct.  In Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 307-8 (3d Cir. 1995), the court upheld the finding of the district court that an insurance company had a reasonable basis for denying the plaintiff's claim and that ample grounds for its allegations of fraud existed. Indeed, an allegation of bad faith must be proven by clear and convincing evidence.  U.S. Fire Ins. Co. v. Royal Ins. Co., 759

14

F.2d 306, 309 (3d Cir. 1985).

Here, Plaintiff essentially argues that Transamerica's investigation into the proper owner and beneficiary of the insurance Policy was reckless and its decision to allocate the life insurance benefit to Ms. Yelson lacked a reasonable basis. We disagree.

In order to determine whether an insurer acted in bad faith in conducting an investigation into whether an insured was entitled to benefits, courts have looked to the following:

> Judges of this court have held that an insurance company's substantial and thorough investigation of an insurance claim, forming the basis of a company's refusal to make or continue making benefit payments, establishes a reasonable basis that defeats a bad faith claim...To defeat a bad faith claim, the insurance company need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion. Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action.

Mann v. UNUM Life Ins. Co. of America, 2003 WL 22917545 at *7 (E.D. Pa. 2003).

Transamerica has set forth sufficient evidence demonstrating that it took reasonable steps to determine the proper beneficiary of the life insurance Policy before paying the entire benefit to Ms. Yelson.  Plaintiff argues that James Smith's lack of qualifications as a handwriting expert precluded him from properly assessing the validity of the signatures on the change

forms.  Mr. Smith testified at length, however, that he reached his conclusion based upon a thorough review of the file, a comparison of the documents and his substantial experience in the industry.  Defendant argues that Mr. Smith was particularly careful because Ms. Yelson had alerted the company of a possible challenge to the benefit by her late father's second wife.  (Def. Mot. at 28).  Plaintiff has failed to demonstrate how Transamerica's determination was unreasonable under the standard set forth in <u>Mann</u>.

Furthermore, we agree with Transamerica that Plaintiff's bad faith claim is particularly weak in light of the facts of this case.  Transamerica did not refuse to pay an insurance benefit in order to serve its own self interest.  In fact, the company paid the entire $1 million Policy benefit to Ms. Yelson.  As a result, Plaintiff has failed to show that he can demonstrate, by clear and convincing evidence, that Transamerica acted unreasonably before or after paying the death benefit to Ms. Yelson, giving rise to a claim for bad faith.  Accordingly, we grant Defendant and Third Party Defendant summary judgment on Count III of Plaintiff's complaint.

## D.   Unfair Trade Practices and Consumer Protection Law

Lastly, Plaintiff claims that he is entitled to relief under the UTPCPL because Transamerica failed to conduct a reasonable and prompt investigation into Plaintiff's entitlement to receive

16

insurance benefits following his father's death.

In order to prove common law fraud under the UTPCPL, a plaintiff must show: (1) a material misrepresentation of an existing fact; (2) scienter; (3) justifiable reliance on the misrepresentation; and (4) damages. Sponaugle v. First Union Mortg. Corp., 40 Fed. Appx. 715, 718 (3d Cir. 2002). "A plaintiff can plead scienter by alleging facts establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 216 (2006) (citations omitted).

We agree with Defendants that Plaintiff lacks standing to assert a claim under the UTPCPL because he was not a purchaser of the insurance Policy as is required by the statute. The UTPCPL clearly states that claims may be brought by a "person who purchases or leases goods and services." 73 P.S. § 201-9.2(a). Thus, only the purchaser of an insurance Policy can assert a claim against an insurer under this statute. See e.g. Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mut. Auto Ins. Co., 40 F.3d 63,65 (3d Cir. 1994).

It is uncontested that Sheila Yelson was the sole owner of the Policy at the time of its issuance in August 1990. Mr. Levin does not assert that he ever paid the premiums on the Policy and has presented insufficient evidence that this status ever

17

changed.   Furthermore, Plaintiff is not entitled to relief under the UTPCPL because it does not provide a cause of action for bad faith conduct based upon an insurance company's refusal to pay a claim.   See Gordon v. Pennsylvania Blue Shield, 548 A.2d 600, 604 (Pa. Super 1988)("The alleged improper refusal to [pay insurance proceeds] does not constitute actionable misfeasance [but merely nonfeasance].   Nonfeasance alone is not sufficient to raise a claim pursuant to the Unfair Trade Practices and Consumer Protection Law.")

Because Plaintiff lacks standing to assert this claim under the UTPCPL and has failed to demonstrate misfeasance on the part of Transamerica, his claim is denied as a matter of law and Defendant and Third Party Defendant are entitled to summary judgment on Count IV of Plaintiff's complaint.

**E.   Conclusion**

For all of the reasons set forth above, Defendant's and Third Party Defendant's Motion for Summary Judgment is GRANTED. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY ALAN LEVIN                      :
                                        :
          Plaintiff,                    :        CIVIL ACTION
                                        :
     v.                                 :        No. 05-5172
                                        :
TRANSAMERICA OCCIDENTAL LIFE            :
INSURANCE COMPANY                       :
                                        :
          Defendant/                    :
          Third Party Plaintiff,        :
                                        :
     v.                                 :
                                        :
SHEILA YELSON                           :
                                        :
     Third Party Defendant.             :

### ORDER

AND NOW, this  20th  day of August, 2008, upon
consideration of Defendant's and Third Party Defendant's Joint
Motion for Summary Judgment, and the responses thereto, for the
reasons stated in the accompanying memorandum, it is hereby
ORDERED that the Motion is GRANTED.  Judgment as a matter of law
is hereby ENTERED in favor of Defendant on all of Plaintiff's
claims.

BY THE COURT:

J. CURTIS JOYNER, J.